IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RUBICON COMMUNICATIONS LP | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. |
| v. | § § | 1:11-cv-709 |
| AT&T INTELLECTUAL PROPERTY II, LP, AT&T INTELLECTUAL PROPERTY, INC., and AT&T CORPORATION | § § § § | JURY DEMANDED |
| Defendants. | § § § | |

## COMPLAINT

**The Parties**

1. Plaintiff, Rubicon Communications, L.P., is a Texas limited partnership comprised of Jim Thompson, Jamie Thompson, and Rubicon Communications Management Group LLC, general partners (collectively, "Rubicon" unless otherwise individually specified).

2. Upon information and belief, Defendant AT&T Intellectual Property II, L.P. is a Nevada limited partnership, with a business address of 645 East Plumb Lane, Reno, Nevada 89502. Upon information and belief, the general partner of AT&T Intellectual Property II, L.P. is AT&T Intellectual Property, Inc., a Delaware corporation with offices at 645 East Plumb Lane, Reno, Nevada 89502. Upon information and belief, AT&T Corporation is a New York corporation with offices located at 32 Avenue of the Americas, New York, New York 10013 as well as in Texas. Upon information and belief, AT&T Corp. owns or controls AT&T Intellectual Property II, L.P. and AT&T Intellectual Property, Inc. The foregoing entities are collectively referred to herein as "AT&T" or "Defendants," unless otherwise individually specified.

## JURISDICTION

3. Jurisdiction is proper in this Court pursuant to 15 U.S.C.A. § 1121, and 28 U.S.C.A. §§ 1331 and 1338, because this action, at least in part, is an action for trademark infringement and unfair competition, and arises under the trademark laws of the United States, Title 15, United States Code. This Court has jurisdiction over any Texas state law claims under principles of pendent and ancillary jurisdiction.

4. Upon information and belief, Defendants offer telecommunications products and services, and manage the intellectual property relating to such products and services (the "AT&T Products").

5. Upon information and belief, Defendants actively market and sell telecommunications products and services to customers worldwide, nationwide, and statewide, including to persons and entities who reside in this judicial district and division.

6. This Court may exercise personal jurisdiction over Defendants by virtue of Defendants' marketing and sales of commercial goods and/or services within this judicial district.

7. This Court may exercise personal jurisdiction over Defendants by virtue of Defendants' commission of the activities complained of herein within this judicial district.

## VENUE

8. Venue is proper in this district pursuant to 28 U.S.C.A. §§ 1391(b) and (c) because certain Defendants reside and/or maintain one or more offices in this district, and/or because certain Defendants may be found in this district, and/or because one or more of the acts complained of took place in this district.

## **GENERAL AVERMENTS**

9. On or about March 10, 2004, Rubicon, through its predecessor-in-interest, Jim Thompson, filed a use-based trademark application with the United States Patent and Trademark Office ("USPTO") for registration of the mark NETGATE in International Class 9, which matured to registration on or about October 24, 2006, and in which a first use in commerce date of April 15, 1993 was claimed. *See* printout of U.S. Reg. No. 3161285, attached hereto as **Exhibit A**.

10. Mr. Thompson previously owned U.S. Reg. No. 2038157 for the mark NETGATE (on assignment from Smallworks, Inc.), which matured to registration on February 18, 1997, but which was inadvertently cancelled in November 2003 due to a docketing error. Nonetheless, the NETGATE mark has been in continuous use in commerce by Rubicon and/or its predecessors-in-interest since at least as early as April 1993.

11. Rubicon and its predecessor-in-interest have for many years operated an active business by the name of "Netgate." *See* documents and website printouts attached as composite **Exhibit B**. In addition, the Netgate business operates a website located at www.netgate.com. The domain name "netgate.com" was registered by Rubicon and its predecessor-in-interest in 1997, and has been in use since that time. *See* WhoIs record attached as **Exhibit C**.

12. On or about May 14, 2001, Defendant AT&T Corp. filed an intent-to-use trademark application for registration of the mark NETGATE in International Class 9 (Serial No. 78063419), which matured to registration on or about September 19, 2006, and in which a first use in commerce date of January 1, 1999 was claimed. *See* printout of U.S. Reg. No. 3146119, attached hereto as **Exhibit D**.

13. Rubicon's predecessor-in-interest filed Opposition No. 91/163,507 against AT&T Corp.'s application serial no. 78063419 for the NETGATE mark, based on prior use of the NETGATE mark. *See* printout of opposition no. 91/163,507, filed with the Trademark Trial and Appeal Board ("TTAB"), attached as **Exhibit E**.

14. On or about March 6, 2006, Rubicon's predecessor-in-interest and AT&T Corp. entered into a settlement agreement. *See* agreement filed with the TTAB, attached hereto as **Exhibit F**.

15. Pursuant to the terms of the agreement, AT&T Corp. (and its successors and assigns pursuant to para. 7 of the agreement, which would include all Defendants) was only authorized to use the agreed-upon mark (AT&T NETGATE) in connection with certain specified goods or services, as indicated by section 2.1 of the agreement:

> AT&T agrees to amend the listed goods and services in the '419 Application to remove: "telecommunications computer programs to enable dial up access to a telecommunications network and to enable virtual private telecommunications network services," and to only use the AT&T NETGATE mark in association with the amended identification of goods set forth in the '419 Application.

16. Pursuant to the terms of the agreement, AT&T Corp. (and therefore all Defendants) was only authorized to use NETGATE in direct connection with the AT&T "house mark," as per section 2.2 of the agreement:

> AT&T agrees to use the mark "AT&T" in direct and prominent proximity with the mark NETGATE (e.g., "AT&T NETGATE") in connection with the goods cited in the '419 Application […]

17. Pursuant to the terms of the agreement, AT&T Corp. (and therefore all Defendants) was only authorized to use NETGATE standing alone for a three (3) month "phase out" period, after which NETGATE would not be used for any goods or services, as indicated in section 3.2 of the agreement:

> For a period of three (3) months following the Effective Date, Thompson expressly agrees that AT&T may use the NETGATE mark in association with AT&T's sale and use of goods cited in the '419 Application, and marketing materials therefore, which are already in AT&T's inventory, provided that at the end of such three (3) month period AT&T will use the mark AT&T NETGATE in association with such goods, and the mark NETGATE standing alone will not be used by AT&T or on its behalf in association with any goods or services.

*See* **Exhibit F** for the foregoing quoted sections.

18. Despite the foregoing terms of the agreement, and contrary thereto, and despite the notice given to Defendants by Rubicon, Defendants have used the mark NETGATE standing alone (without "AT&T" preceding it) in connection with "internal documents for training mistakenly posted online," "customer guides," and "marketing materials … viewed … by existing customers." *See* correspondence to and from Defendants' counsel, attached hereto as composite **Exhibit G**.

19. Defendants used NETGATE as a standalone mark, in connection with materials that are beyond the scope of the identified goods or services in the agreement, and well past the three (3) month phase out period referenced in the agreement between Defendants and Rubicon's predecessor-in-interest. *See* **Exhibit H**. Such usage by Defendants has directly and proximately caused harm and damages to Rubicon, including but not limited to instances of actual confusion among consumers, thereby resulting in not only devotion of time and energy to misdirected inquiries from consumers, but upon information and belief, lost revenue and sales. *See* **Exhibit I**.

20. In addition to the foregoing, representatives from within AT&T have also contacted Rubicon, asking for information regarding AT&T's NETGATE product. *See, e.g.,* composite **Exhibit J**. Such inquiries from AT&T representatives to Rubicon indicates that not only is confusion <u>likely</u> because of AT&T's unauthorized use, AT&T's own employees and

representatives are (a) <u>actually</u> confused as to the possible source, affiliation, relationship, or sponsorship between Rubicon's NETGATE-branded products and AT&T's products, and (b) not using the AT&T house mark in front of "Netgate," thereby contributing to the confusion and infringement of Rubicon's rights.

### **Count I – Breach of Contract**

21. Rubicon hereby repeats the allegations of paragraphs 1-20 above as if fully set forth herein.

22. The March 6, 2006 agreement between Rubicon's predecessor-in-interest and AT&T Corp. constituted a valid contract that was binding upon the parties hereto.

23. Defendants' actions as set forth hereinabove constitute a material and intentional breach of the terms of the agreement.

24. Rubicon had performed all conditions precedent to the agreement between the parties, and was not otherwise in breach of the agreement.

25. Defendants' breach of the terms of the agreement has directly and proximately caused damages and other harm to Rubicon.

### **Count II – Trademark Infringement**

26. Rubicon hereby repeats the allegations of paragraphs 1-25 above as if fully set forth herein.

27. This cause of action arises under § 32 of the Trademark Act of 1946 as amended (15 U.S.C. § 1114) for infringement of federally registered trademark.

28. By reason of the foregoing acts, upon information and belief, the Defendants have infringed, and shall continue to infringe, Rubicon's federally registered trademark, causing

irreparable injury, the full extent of which cannot presently be determined.  Unless Defendants are enjoined by the Court, the irreparable injury, harm and damages to Rubicon shall continue.

### Count III – Unfair Competition

29. Rubicon hereby repeats the allegations of paragraphs 1-28 above as if fully set forth herein.

30. This cause of action arises under the common law of unfair competition of the State of Texas, as well as pursuant to the Lanham Act, 15 U.S.C. § 1125.

31. By reason of the foregoing acts, Defendants have traded upon and appropriated the reputation and valuable good will of Rubicon and have acted to create the likelihood of confusion and mistake on the part of the purchasing public as to the source of Defendants' goods and/or services.

32. Defendants' acts are likely to lead the public mistakenly to the belief that Defendants' goods and/or services are in some way related to, sponsored by, or associated with, Rubicon, and/or create the impression that Defendants' and Rubicon's goods and/or services are distributed under the same corporate aegis and authority.

33. Defendants' activities constitute unfair competition and a misappropriation and infringement of Rubicon's registered and common law trademark rights, and have caused and will continue to cause irreparable injury, harm and damages to Rubicon unless enjoined by this Court.

### Count IV – Fraud

34. Rubicon hereby repeats the allegations of paragraphs 1-33 above as if fully set forth herein.

35. This cause of action arises under the common law of the State of Texas.

36. Upon information and belief, Defendants knowingly and intentionally (or recklessly without any knowledge of the truth) made materially false, misleading, inaccurate and fraudulent statements to Rubicon and to the USPTO with the intention that Rubicon and the USPTO rely upon such statements so that Defendants would be able to obtain registration of the Defendants' NETGATE mark.

37. Rubicon relied upon Defendants' materially false, misleading, inaccurate and fraudulent statements and thereupon agreed to settle its opposition against Defendants.

38. Upon information and belief, the USPTO relied upon Defendants' materially false, misleading, inaccurate and fraudulent statements in granting Defendants' registration for the NETGATE mark.

39. The materially false, misleading, inaccurate and fraudulent statements of Defendants have directly and proximately caused damage and harm to Rubicon, including but not limited to instances of actual confusion among consumers.

## Count V – Cancellation of Registration

40. Rubicon hereby repeats the allegations of paragraphs 1-39 above as if fully set forth herein.

41. This cause of action arises under 15 U.S.C. § 1119.

42. By virtue of the March 6, 2006 agreement between Rubicon and Defendants, Defendants were contractually obligated to not use NETGATE standing alone.

43. In light of such contractual obligations, Defendants have abandoned use of Defendants' registered NETGATE mark on or in connection with the goods and services recited in U.S. Reg. No. 3146119. As a result of such abandonment, cancellation of U.S. Reg. No. 3146119 is appropriate.

44. In the alternative, and to the extent that Defendants have not abandoned use of NETGATE as a standalone mark as per the terms of the agreement shown in Exhibit F, then in such event, and upon information and belief, Defendants' continued use of the NETGATE mark standing alone constitutes fraud on Rubicon as well as upon the USPTO.

45. Upon information and belief, Defendants (through their predecessor-in-interest) knowingly and intentionally (or recklessly without any knowledge of the truth) made materially false, misleading, inaccurate and fraudulent statements to Rubicon and to the USPTO in order to obtain registration of the NETGATE mark.

46. Rubicon relied upon Defendants' materially false, misleading, inaccurate and fraudulent statements and thereupon agreed to settle its opposition against Defendants.

47. Upon information and belief, the USPTO relied upon Defendants' materially false, misleading, inaccurate and fraudulent statements in granting Defendants' registration for the NETGATE mark.

48. The materially false, misleading, inaccurate and fraudulent statements of Defendants have caused damage and harm to Rubicon, including but not limited to instances of actual confusion among consumers.

49. In light of the fraudulent statements and/or actions of Defendants, as well as the actual confusion being caused by Defendants' statements and/or actions, cancellation of Defendants' U.S. Reg. No. 3146119 is appropriate.

## Jury Demand

50. Rubicon demands a trial by jury on all issues.

**PRAYER FOR RELIEF**

WHEREFORE, Rubicon prays for judgment jointly and severally against the Defendants, and for relief including:

A.    Upon proper application, a preliminary and/or permanent injunction enjoining Defendants against continuation of the illegal acts recited above, and in addition:

l.    That the Defendants, their agents, officers, directors, employees, servants, attorneys, privies, successors and assigns, and all holding by, through or under the Defendants, and all those acting for or on the behalf of Defendants, or in active concert, participation, or combination with them, be enjoined and restrained, immediately and preliminarily, during the pendency of this action and permanently thereafter from:

(a)    using the NETGATE trademark or any colorable imitation thereof on or in connection with goods and/or services not originating with Rubicon;

(b)    advertising, distributing, offering for sale or selling any goods, services and/or franchises using the registered NETGATE trademark or any colorable imitation thereof;

(c)    using, in connection with the advertising, offering for sale or sale of any goods, services and/or franchises, any false designation, description or representation stating or implying that Rubicon, either separately or jointly, is the origin of, or connected with, such goods, services and/or franchises;

(d)    passing off or inducing or enabling others to sell or pass-off goods, not of Rubicon manufacture or sponsorship, as and for the products of Rubicon;

        (e)    otherwise infringing upon Rubicon's trademark, competing unfairly with Rubicon, injuring its business reputation, or diluting the distinctive quality of its trademark.

      2.    That this Court order Defendants, and their officers, agents, servants and employees, to deliver up to this Court, and to permit the seizure by Officers appointed by the Court, all articles and materials either infringing upon the rights of Rubicon or embodying Rubicon's NETGATE trademark, and particularly, without limitation, all signs, advertising, printed material or other merchandise which embodies or includes Rubicon's NETGATE trademark, or in Defendants' possession or control and of the type used to compete unfairly with Rubicon, to be impounded and held in the custody of this Court during the pendency of this action, and to be delivered up for destruction on the issuance of a final Order in this action, including all infringing copies and other matter for reproducing such infringing copies, and Defendants submit in writing, under oath, a description of all actions each has taken to comply with this portion of the Order.

B.    An accounting for and an award of the profits earned by Defendants as a result of Defendants' illegal acts and the damages suffered by Rubicon as a result of Defendants' illegal acts.

C.    An award of damages stemming from the causes of action set forth hereinabove.

D.    An order canceling Defendants' U.S. trademark reg. no. 3146119 for the mark NETGATE.

E.    An award of treble damages and an award of punitive or exemplary damages.

F.    An award of costs and reasonable attorneys' fees.

G.    An award or pre- and post-judgment interest.

H.	All other relief as the Court may deem just.

> Respectfully submitted,
>
> /Dwayne K. Goetzel/
> _____
> Dwayne K. Goetzel
> Texas Bar No. 08059500
> Eric B. Meyertons
> Texas Bar No. 14004400
> Meyertons, Hood, Kivlin,
>   Kowert & Goetzel, P.C.
> 1120 S. Capital of Texas Hwy.
> Building 2, Suite 300
> Austin, Texas 78746
> (512) 853-8800 (telephone)
> (512) 853-8801 (facsimile)
>
> **ATTORNEYS FOR PLAINTIFF**
> **RUBICON COMMUNICATIONS, L.P.**